**TOSTRUD LAW GROUP, P.C.**
JON A. TOSTRUD
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARD ROUSE, Derivatively on Behalf of Nominal Defendant EKSO BIONICS HOLDINGS, INC.,   ) ) ) ) | CASE NO.: 18-cv-1348 |
| Plaintiff,   ) ) | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| STEVEN SHERMAN, THOMAS LOOBY, MARILYN HAMILTON, HOWARD PALEFSKY, JACK PEURACH, STANLEY STERN, THEODORE WANG, and AMY WENDELL,   ) ) ) ) ) ) ) ) ) | |
| v.   ) ) | |
| Defendants,   ) ) | **JURY TRIAL DEMANDED** |
| EKSO BIONICS HOLDINGS, INC., a Nevada Corporation,   ) ) ) | |
| Nominal Defendant.   ) ) | |

Plaintiff Ward Rouse ("Plaintiff"), on behalf of Ekso Bionics Holdings, Inc. ("Ekso" or the "Company"), derivatively, allege the following based upon personal

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

knowledge as to himself and his own acts, and upon information and belief and investigation of counsel as to all other matters.  That investigation included, among other things, a thorough review and analysis of public documents, court filings, press releases and news articles concerning Ekso, and the other facts as set forth herein:

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought on behalf of and for the benefit of Ekso, against certain of its officers and/or directors named as defendants herein seeking to remedy their breaches of fiduciary duties.  Defendants' actions have caused, and will continue to cause, substantial financial harm and reputational damage to Ekso.

2.      Ekso designs, develops, and sells exoskeletons for use in the healthcare, industrial, military, and consumer markets in North America, Europe, the Middle East, and Africa.  The Company operates through Medical Devices, Industrial Sales, and Engineering Services segments.  It primarily offers Ekso GT, a bionic suit that provides the ability to stand and walk over ground to individuals with spinal cord injuries, hemiplegia, and lower limb paralysis or weakness.

3.      Throughout the Relevant Period (March 15, 2017 and December 27, 2017), Defendants caused the Company to make materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants caused the Company to make false and/or misleading statements and/or failed to disclose that: (i) the Company had a material weakness in its internal control over financial reporting; (ii) the Company's disclosure controls and procedures were not effective; and (iii) as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

4.      On December 14, 2017, Defendants caused the Company to file a Form 8-K with the United States Securities and Exchange Commission ("SEC") that advised investors that "the Company's internal control over financial reporting as of December 31, 2016 should no longer be relied upon and that a material weakness in the Company's internal control over financial reporting existed as of such date."  The Company stated that its announcement was due to a reevaluation of the Company's information technology ("IT") controls by OUM & Co. LLP ("OUM"), the Company's auditor.   The Company also stated that it intended "to amend [its] Annual Report on Form 10-K for the fiscal year ended December 31, 2016 and [its] Quarterly Reports on Form 10-Q for the periods ended March 31, 2017, June 30, 2017 and September 30, 2017 to reflect the conclusion by management that there was a material weakness in internal control over financial reporting and that [its] disclosure controls and procedures were not effective as of the end of the periods covered by these reports."

5.      The Company's stock price dropped $0.15, or 6.17%, to close at $2.28 on December 15, 2017 on this news.

6.      On December 27, 2017, the Company filed an amended annual report for 2016 and amended quarterly reports for the first three quarters of 2017 on Form 10-Q.  The Company's stock price dropped $0.34, or over 13%, to close at $2.23 on December 28, 2017 on this news.

## JURISDICTION AND VENUE

7.      This Court also has jurisdiction over the claims asserted herein under 28 U.S.C. § 1331 because Plaintiff and Defendants have diverse citizenship.

8.      The Court has jurisdiction over each defendant because each defendant is either a corporation that does sufficient business in California or is an individual who has sufficient minimum contacts with California so as to render the

exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of the Defendants either resides in or maintains executive offices in this District, including Nominal Defendant Ekso, a substantial portion of the transactions and wrongs complained of herein – including Defendants' primary participation in the wrongful acts detailed herein and aiding and abetting in violations of fiduciary duties owed to Ekso – occurred in this District, and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

10.     In connection with the acts and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchanges and markets.

**PARTIES**

**Plaintiff**

11.     ***Plaintiff Ward Rouse*** is a citizen of the State of Iowa and a current Ekso shareholder during the Relevant Period.  Plaintiff will continue to hold Ekso shares throughout the pendency of this action.  Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

**Nominal Defendant**

12.     ***Nominal Defendant Ekso*** designs, develops, and sells exoskeletons for use in the healthcare, industrial, military, and consumer markets in North America, Europe, the Middle East, and Africa.  The Company operates through Medical Devices, Industrial Sales, and Engineering Services segments.

**Director Defendants**

13.   **Defendant Steven Sherman** ("Sherman") has served on the Board of Directors (the "Board") of the Company since December 2013.  Defendant Sherman is the Chairman of the Audit Committee and is a member of the Nominating and Governance Committee.   Defendant Sherman is, upon information and belief, a citizen of the State of Connecticut.

14.   **Defendant Tom Looby** ("Looby") is President and Chief Executive Officer ("CEO") of the Company.  Defendant Lobby is also a Director of the Company.  Defendant Lobby is, upon information and belief, a citizen of the State of California.

15.   **Defendant Marilyn Hamilton** ("Hamilton") has served on the Board of the Company since January 2012.  Defendant Hamilton is a member of the Compensation Committee.  Defendant Hamilton is, upon information and belief, a citizen of the State of California.

16.   **Defendant Howard Palefsky** ("Palefsky") serves on the Board of the Company.  Defendant Palefsky is a member of the Nominating and Governance Committee.  Defendant Palefsky is, upon information and belief, a citizen of the State of Georgia.

17.   **Defendant Jack Peurach** ("Peurach") has served on the Board of the Company since January 2012.  Defendant Peurach is a member of the Nominating and Governance Committee and a member of the Audit Committee.  Defendant Peurach is, upon information and belief, a citizen of the State of California.

18.   **Defendant Stanley Stern** ("Stern") served on the Board of the Company during the Relevant Period.   Defendant Stern is a member of the Audit Committee.  Defendant Stern is, upon information and belief, a citizen of the State of New York.

19.   **Defendant Amy Wendell** ("Wendell") served on the Board of the Company during the Relevant Period.   Defendant Wendell is a member of the

Compensation Committee.  Defendant Wendell is, upon information and belief, a citizen of the State of Massachusetts.

20.     ***Defendant Ted Wang*** ("Wang") served on the Board of the Company during the Relevant Period.  Defendant Wang is a member of the Nominating and Governance Committee.  Defendant Wang is, upon information and belief, a citizen of the State of New York.

**Audit Committee Charter**

21.     Pursuant to the Company's Audit Committee Charter, the purpose of the Audit Committee is to assist the Board with oversight of the Company's accounting and financial reporting processes and the audit of the Company's financial statements.

22.     The Audit Committee Charter states in relevant part:

> The Audit Committee shall discharge its responsibilities, and shall assess the information provided by the Company's management and the Company's registered public accounting firm (the "independent auditor"), in accordance with its business judgment.  Management is responsible for the preparation, presentation, and integrity of the Company's financial statements, for the appropriateness of the accounting principles and reporting policies that are used by the Company and for establishing and maintaining adequate internal control over financial reporting.  The Audit Committee shall review the Company's compliance with applicable laws and regulations and review and oversee any policies, procedures and programs designed to promote such compliance. The independent auditor is responsible for auditing the Company's financial statements and the Company's internal control over financial reporting and for reviewing the Company's unaudited interim financial statements. The authority and responsibilities set forth in this Charter do not reflect or create any duty or obligation of the Audit Committee to plan or conduct any audit, to determine or certify that the Company's financial

statements are complete, accurate, fairly presented, or in accordance with generally accepted accounting principles or applicable law, or to guarantee the independent auditor's reports.

\*   \*   \*

Oversight. The Audit Committee shall coordinate the Board's oversight of the Company's internal control over financial reporting, disclosure controls and procedures and code of conduct. The Audit Committee shall receive and review the independent auditor's report on the effectiveness of the Company's internal control over financial reporting and the reports of the principal executive officer and the principal financial officer required by Rule 13a-14 under the Exchange Act.

## SUBSTANTIVE ALLEGATIONS

23.     On March 15, 2017, Defendants caused the Company to file an annual report on Form 10-K with the SEC.  It was in this Form 10-K that the Company announced its financial and operating results for the quarter and year ended December 31, 2016 ("2016 Form 10-K").  The 2016 Form 10-K stated in relevant part:

The Company's management assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2016 based on the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission in Internal Control—Integrated Framework (2013).  The Company's management believes that based on this criteria, as of December 31, 2016, the Company's internal control over financial reporting is effective.  The effectiveness of our internal control over financial reporting as of December 31, 2016 has been audited by OUM LLP, an independent registered public accounting firm, as stated in their report, which appears under Item 8 of this Annual Report on Form 10-K.

*Changes in Internal Control Over Financial Reporting*:

1
2
3
4

> There were no changes in our internal control over financial reporting identified in connection with the evaluation required by (d) of Exchange Act Rules 13a-15 or 15d-15 that occurred during our fourth quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

5
6
7
8

24.   In the 2016 Form 10-K, the Company included a Report of Independent Registered Public Accounting Firm, signed by OUM, stating that "Ekso . . . maintained, in all material respects effective internal control over financial reporting as of December 31, 2016."

9
10
11
12
13

25.   The 2016 Form 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), stating that "the information contained in the [2016 Form 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates and for the periods indicated."

14
15
16
17

26.   On May 9, 2017, Defendants caused the Company to file a quarterly report on Form 10-Q with the SEC.  It was in this Form 10-Q that the Company announced its financial and operating results for the quarter ended March 31, 2017 ("Q1 2017 Form 10-Q").  The Q1 2017 Form 10-Q stated in relevant part:

18
19

> *Changes in Internal Control Over Financial Reporting*

20
21
22

> There were no changes in our internal control over financial reporting that occurred during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

23
24
25
26

27.   The Q1 2017 Form 10-Q contained signed certifications pursuant to SOX, stating that "the information contained in the [Q1 2017 Form 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates and for the periods indicated."

27
28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

8

28.     On August 7, 2017, Defendants caused the Company to file a quarterly report on Form 10-Q with the SEC.  It was in this Form 10-Q that the Company announced its financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 Form 10-Q").   In the Q2 2017 Form 10-Q, the Company stated in relevant part:

*Changes in Internal Control Over Financial Reporting*

There were no changes in our internal control over financial reporting that occurred during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

29.     The Q2 2017 Form 10-Q contained signed certifications pursuant to SOX, stating that "the information contained in the [Q2 2017 Form 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates and for the periods indicated."

30.     On November 8, 2017, Defendants caused the Company to file a quarterly report on Form 10-Q with the SEC.  It was in this Form 10-Q that the Company announced its financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 Form 10-Q").  In the Q3 2017 Form 10-Q, the Company stated in relevant part:

*Changes in Internal Control Over Financial Reporting*

There were no changes in our internal control over financial reporting that occurred during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

31.     The Q3 2017 Form 10-Q contained signed certifications pursuant to SOX, stating that "the information contained in the [Q3 2017 Form 10-Q] fairly

presents, in all material respects, the financial condition and results of operations of the Company at the dates and for the periods indicated."

32.    The statements referenced above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company had a material weakness in its internal control over financial reporting; (ii) the Company's disclosure controls and procedures were not effective; and (iii) as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

**THE TRUTH EMERGES**

33.    On December 14, 2017, Defendants caused the Company to file a Form 8-K with the SEC.  The Form 8-k stated in relevant part: "that the Company's internal control over financial reporting was not effective at December 31, 2016 and, accordingly, its disclosure controls and procedures were not effective at December 31, 2016 or for subsequent interim periods."  The Form 8-K further stated:

> On December 8, 2017, OUM & Co. LLP ("OUM") notified Ekso Bionics Holdings, Inc. (the "Company") that it had concluded that its report on the effectiveness of the Company's internal control over financial reporting as of December 31, 2016 should no longer be relied upon and that a material weakness in the Company's internal control over financial reporting existed as of such date.  This material weakness has not resulted in a restatement of the Company's consolidated financial statements or footnote disclosures for any periods through and including the fiscal year ended December 31, 2016.

*    *    *

As part of its original audit of the Company's financial statements included in the 2016 10-K, OUM assessed the Company's internal control over financial reporting as of December 31, 2016.  At that time, OUM and the Company concluded that the Company maintained effective internal control over financial reporting as of December 31, 2016. Subsequent to the issuance of the 2016 10-K, the Public Company Accounting Oversight Board conducted an inspection of OUM's 2016 audit of the Company.  As a result, OUM reevaluated the Company's information technology (IT) general controls and has now concluded that a "material weakness" existed as of December 31, 2016.

As a result of the identified material weakness, OUM has performed additional testing on the Company's financial statements as of and for the year ended December 31, 2016 to reconfirm their opinion on the fairness of the financial statements included in the 2016 10-K without reliance on the effectiveness of the Company's internal controls.  As noted above, OUM has now reconfirmed its unqualified opinion on the fairness of the Company's financial statements included in the 2016 10-K.

After consultation with OUM, management has now concluded that the Company's internal control over financial reporting was not effective at December 31, 2016 and, accordingly, its disclosure controls and procedures were not effective at December 31, 2016 or for subsequent interim periods . . . .

We plan to amend our Annual Report on Form 10-K for the fiscal year ended December 31, 2016 and our Quarterly Reports on Form 10-Q for the periods ended March 31, 2017, June 30, 2017 and September 30, 2017 to reflect the conclusion by management that there was a material weakness in internal control over financial reporting and that our disclosure controls and procedures were not effective as of the end of the periods covered by these reports. OUM's auditor's report on the Company's internal control over financial reporting will also be revised to state

that the Company's internal control over financial reporting at December 31, 2016 was not effective.

34.     The Company's stock price dropped $0.15, or 6.17%, to close at $2.28 on December 15, 2017.

35.     On December 27, 2017, the Company filed an amended annual report for 2016 and amended quarterly reports for the first three quarters of 2017 on Form 10-Q.

36.     The Company's stock price dropped $0.34, or over 13%, to close at $2.23 on December 28, 2017.

## DUTIES OF DEFENDANTS

37.     By reason of their positions as officers, directors, and/or fiduciaries of Ekso and because of their ability to control the business and corporate affairs of Ekso, Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Ekso in a fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of Ekso and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interest or benefit.

38.     Each director and officer of the Company owes to Ekso and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

39.    Defendants, because of their positions of control and authority as directors and/or officers of Ekso, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with Ekso, each of the Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of Ekso.

40.    To discharge their duties, the officers and directors of Ekso were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Ekso were required to, among other things:

a)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

d)    remain informed as to how Ekso conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or

practices, make reasonable inquiry in connection therewith, take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

e)     ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations;

41.     Each Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Ekso, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that Defendants were aware or should have been aware posed a risk of serious injury to the Company.

42.     Each director and officer of the Company owed to Ekso the fiduciary duty to exercise due care and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of good faith and fair dealing.  In addition, as officers and/or directors of a publicly held company, Defendants had a duty not to advance their own personal, financial, or economic interests over, and at the expense of, the Company's public shareholders, or to allow other Ekso directors, officers, and/or employees to do so.  Each director and officer of the Company also owed Ekso and its shareholder-owners the duty to maintain the Company's confidential information and prevent others from misappropriating and/or trading while in possession of the Company's proprietary, confidential information.

43.     Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent the information as detailed *infra*. Defendants' subjected the Company to the costs of defending and the potential liability from a class action lawsuit for violations of the federal securities laws.  As a result, Ekso has expended, and will continue to expend, significant sums of money.

44.     Defendants' actions have irreparably damaged Ekso's corporate image and goodwill.

**DEMAND FUTILITY ALLEGATIONS FOR THE BOARD OF EKSO**

45.     Plaintiff will adequately and fairly represent the interests of Ekso and its shareholders in enforcing and prosecuting its rights.

46.     Plaintiff brings this action derivatively in the right and for the benefit of Ekso to redress injuries suffered and to be suffered by Ekso because of the breaches of fiduciary duty by Defendants.

47.     Because of the facts set forth herein, Plaintiff has not made a demand on the Board of Ekso to institute this action against Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

48.     The Ekso Board is currently comprised of Sherman, Lobby, Hamilton, Palefsky, Peurach, Stern, Wang and Wendell.  Thus, Plaintiff is required to show that a majority of Defendants, *i.e.*, *four* (4), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

49.     Defendants face a substantial likelihood of liability in this action because they caused Ekso to issue false and misleading statements concerning the information described herein.  Because of their advisory, executive, managerial, and directorial positions with Ekso, Defendants had knowledge of material non-

public information regarding the Company and was directly involved in the operations of the Company at the highest levels.

50.     Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation, proximately causing millions of dollars of losses for Ekso shareholders.

51.     Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this Complaint, Plaintiff has not made (and is excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

52.     Any suit by the Board to remedy these wrongs would likely expose the Company to further violations of the securities laws that would result in civil actions being filed; thus, the Board members are hopelessly conflicted in making any supposedly independent determination about whether to sue themselves.

53.     Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

54.     Defendants authorized and/or permitted the Company to make false statements that disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

## **DEFENDANTS ARE NOT INDEPENDENT**

**Defendant Looby**

55.     Defendant Looby is President and CEO of the Company.  Defendant Looby is also a Director of the Company.

56.     Defendant Looby is not disinterested or independent, and therefore, is incapable of considering demand because Looby (as CEO) is an employee of the Company who derived substantially all of his income from his employment with Ekso, making him not independent.  As such, Lobby cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

57.     Defendant Looby is also a named Defendant in the instant action and in the securities class action entitled *Steven G. Cheehy v. Ekso Bionics Holdings, Inc., et al.*, Case 3:18-cv-00212 (N.D. Cal.) ("Securities Class Action").

58.     This lack of independence and financial benefits received by Defendant Looby renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.

**Defendant Wang**

59.     Defendant Wang is not disinterested or independent, and therefore, is incapable of considering demand because Wang owns 20,543,898 shares of the Company stock or 34.3 % of all the outstanding shares.

60.     Puissance Cross-Border Opportunities II LLC also owns 34.3 % of all the outstanding shares of the Company.  Puissance Capital Fund (GP) LLC serves as the general partner of Puissance Cross-Border Opportunities II LLC. Puissance Capital Management LP serves as the investment manager of Puissance Cross-Border Opportunities II LLC. Puissance Capital Management (GP) serves as the general partner to Puissance Capital Management LP. Defendant Wang is the managing member of the general partners and may be deemed to have voting and investment power over these shares.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

61.     Because of Defendant Wang's large stake in Ekso and for other reasons as alleged herein, Wang is not independent and cannot and should not be tasked and trusted to determine the independence of himself and the other directors.  As a major shareholder, particularly one owning a substantial portion of the Company's stock, Defendant Wang had control of the selection of the other directors.  The fact of Wang's position as an overwhelmingly dominant shareholder is sufficient to support a conclusion that Defendant Wang dominates the Board, whoever its members might be, and therefore that a demand on those directors to sue the stockholder that put them in their positions would be futile.

**Defendant Sherman**

62.     Defendant Sherman is the Chairman of the Audit Committee.

63.     Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, overseeing the accounting and financial reporting processes of the Company and the audits of the financial statements of the Company.  Specifically, as a member of the Audit Committee, Defendant Sherman was tasked with reviewing the Company's compliance with applicable laws and regulations and reviewing and overseeing any policies, procedures and programs designed to promote such compliance.

64.     Defendant Sherman breached his fiduciary duties of due care, loyalty, and good faith, because as a member of the Audit Committee, *inter alia*, he allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious accounting issues and deficiencies described above.  Therefore, Defendant Sherman faces a substantial likelihood of liability for his breach of fiduciary duties and any demand upon him is futile.

65.     Further, Defendant Sherman derived a substantial amount of his income from his Board membership ($142,727 in 2016), making him not independent.   As such, Defendant Sherman cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

**Defendant Peurach**

66.     Defendant Peurach is a member of the Audit Committee.

67.     Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, overseeing the accounting and financial reporting processes of the Company and the audits of the financial statements of the Company.   Specifically, as a member of the Audit Committee, Defendant Sherman was tasked with reviewing the Company's compliance with applicable laws and regulations and reviewing and overseeing any policies, procedures and programs designed to promote such compliance.

68.     Defendant Peurach breached his fiduciary duties of due care, loyalty, and good faith, because as a member of the Audit Committee, *inter alia*, he allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious accounting issues and deficiencies described above.   Therefore, Defendant Peurach faces a substantial likelihood of liability for his breach of fiduciary duties and any demand upon him is futile.

**Defendant Stern**

69.     Defendant Stern is a member of the Audit Committee.

70.     Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, overseeing the accounting and financial reporting processes of the Company and the audits of the financial

statements of the Company.  Specifically, as a member of the Audit Committee, Defendant Sherman was tasked with reviewing the Company's compliance with applicable laws and regulations and reviewing and overseeing any policies, procedures and programs designed to promote such compliance.

71.    Defendant Stern breached his fiduciary duties of due care, loyalty, and good faith, because as a member of the Audit Committee, *inter alia*, he allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious accounting issues and deficiencies described above.  Therefore, Defendant Stern faces a substantial likelihood of liability for his breach of fiduciary duties and any demand upon him is futile.

## FIRST CAUSE OF ACTION

### Against Defendants For Breach of Fiduciary Duty

72.    Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

73.    Defendants owed and owe Ekso fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed and owe Ekso the highest obligation of good faith, fair dealing, loyalty and due care.

74.    Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

75.    The Relevant Period Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business prospects of the Company.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

76.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, Ekso has sustained significant and actual damages. As a result of the misconduct alleged herein, Defendants are liable to the Company.

77.     Plaintiff, on behalf of Ekso, has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Against Defendants for Unjust Enrichment

78.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

79.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Ekso in the form of salaries, bonuses, and other forms of compensation.

80.     Plaintiff, as a shareholder and representatives of Ekso, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## THIRD CAUSE OF ACTION

### (Against Defendants for Abuse of Control)

81.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

82.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence the Company, for which they are legally responsible.

83.     As a direct and proximate result of Defendants' abuse of control, the Company has sustained significant damages.  As a direct and proximate result of

1    Defendants' breaches of their fiduciary obligations of candor, good faith, and
2    loyalty, the Company has sustained and continues to sustain significant damages.

3        84.    As a result of the misconduct alleged herein, Defendants are liable to
4    the Company.  Plaintiff, on behalf of the Company, has no adequate remedy at
5    law.

6    **FOURTH CAUSE OF ACTION**

7    **(Against Defendants for Waste of Corporate Assets)**

8        85.    Plaintiff incorporates by reference and re-alleges each and every
9    allegation set forth above, as though fully set forth herein.

10       86.    As a result of the foregoing, and by failing to properly consider the
11   interests of the Company and its public shareholders, Defendants have caused the
12   Company to waste valuable corporate assets by failing to disclose (i) the Company
13   had a material weakness in its internal control over financial reporting; (ii) the
14   Company's disclosure controls and procedures were not effective; and (iii) as a
15   result of the foregoing, the Company's public statements were materially false
16   and misleading at all relevant times.

17       87.    As a result of the waste of corporate assets, Defendants are each
18   liable to the Company.

19       88.    Plaintiff, on behalf of the Company, has no adequate remedy at law.

20   **PRAYER FOR RELIEF**

21   **WHEREFORE,** Plaintiff pray for relief and judgment as follows:

22       A.    Against Defendants in favor of the Company for the amount of
23   damages sustained by the Company as a result of Defendants' breaches of
24   fiduciary duties, unjust enrichment, abuse of control, and waste of corporate
25   assets;

26

27

28

1    B.    Awarding to Plaintiff the costs and disbursements of the action,

2 including reasonable attorney's fees, accountants' and experts' fees, costs, and

3 expenses; and

4    C.    Granting such other and further relief as the Court deems just and

5 proper.

6 **<u>JURY TRIAL DEMANDED</u>**

7    Plaintiff hereby demands a trial by jury.

8 //

9 //

10

11 DATED: March 1, 2018

12 **TOSTRUD LAW GROUP, P.C.**

13

14 **By:** /s/ Jon A. Tostrud
JON A. TOSTRUD
1925 Century Park East

15 Suite 2100
Los Angeles, CA 90067

16 Telephone: (310) 278-2600
Facsimile: (310) 278-2640

17 Email: jtostrud@tostrudlaw.com

18 **GAINEY McKENNA & EGLESTON**
Thomas J. McKenna

19 Gregory M. Egleston

20 440 Park Avenue South, 5th Floor
New York, NY 10016

21 Tel:  (212) 983-1300
Fax:  (212) 983-0383

22 tjmckenna@gme-law.com
egleston@gme-law.com

23

24 *Attorneys for Plaintiff*

25

26

27

28

**<u>VERIFICATION</u>**

I, WARD ROUSE, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Ekso Bionics Holdings, Inc. and authorize its filing.  I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true.  As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true.  I further declare that I am a current holder of Ekso Bionics Holdings, Inc. common stock.

Date: February __13__, 2018


_____

WARD ROUSE